Dan McVEY, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 2-1281A425.

Court of Appeals of Indiana, Second District.

Aug. 3, 1982.

Susan K. Carpenter, Public Defender, M. E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Dan McVey appeals the judgment of the trial court revoking his probation and ordering him committed to the Department of Correction for two (2) years.

McVey raises two issues on appeal:

(1) whether the trial court had the power to revoke his probation, and

(2) whether in so doing the trial court violated his right to due process.

We affirm.

The facts surrounding the revocation are undisputed. However, the legal conclusion drawn from those facts gives rise to the central issue of this case.

On January 5, 1981 McVey pled guilty to theft. The plea was accepted by the trial court and a judgment of conviction entered. A presentence report was then filed and a sentencing hearing held. At its conclusion the trial court entered an "Order on Sentence" which ordered McVey committed to the Department of Correction for two years and allowed him 48 days credit for time spent in the Jay County Jail prior to disposition.

This order was immediately followed by a "Partial Suspended Sentence" order which reads:

"ORDER BOOK ENTRY

Partial SUSPENDED SENTENCE

Ind.Stat.Ann. § 35–7–1–1 (Burns, 1975)

(Findings by Separate Order.)

"The Court finds that by reason of the character of the defendant and the facts and circumstances surrounding the commission of said crime, the interest of society does not demand or require that the defendant shall suffer the penalty imposed by law.

"The Court finds that the execution of the sentence of imprisonment herein be suspended so long as he complies with all terms and conditions of probation, except for a term of ONE YEAR during which the defendant shall be imprisoned in the custody of the Indiana Department of Correction.

"The defendant is placed on probation for a period of TWO YEARS, upon the following terms and conditions: (set out terms).

"If the defendant violates any of the terms or conditions of his probation within any period of probation, or if the defendant is convicted of committing a new criminal offense committed within the maximum period for which the defendant might have originally been committed, the Court may revoke the suspension of sentence and impose any sentence which might originally have been imposed.

"The defendant is hereby Remanded to the Department of Correction upon the above terms and conditions.

"So Ordered this 5th day of January, 1981."

Record at 142.

A "Conditions of Probation" was then read to McVey in open court and thereafter signed by him. It reads:

"CONDITIONS OF PROBATION

"1. You shall not commit or be convicted of committing another criminal offense, either felony, misdemeanor or traffic. If you are arrested or charged with any such offense, you shall report this fact immediately to the Probation Officer. You shall behave well in the custody of the Department of Correction.

"2. You shall make an appointment to meet with the Probation Officer of this Court within 10 days.* Thereafter you shall report to the Probation Officer as directed by the Probation Officer.

"3. You shall notify the probation office of your new address within twenty-four hours if you change your address from that listed below.*

"4. You may not remove your residence from Jay County without first obtaining written permission from the Court or the Probation Officer.

"5. You must not associate with any person who is likely to influence you to commit any crime.*

"6. You may not use alcohol unless in a lawful manner and you may not use drugs (controlled substances) unless prescribed by a physician.

"7. You shall attend school or obtain and keep regular employment.*

"8. You shall permit the Probation Officer or any other law officer to enter your home and make reasonable inquiry into your activities while on probation.

"9.  You agree to waive extradition to the State of Indiana and agree to voluntarily return to this State and appear before the Court when so ordered by the Court.

"10.  You shall pay to the Clerk the sum of $45.00 until a total of $45.00 is paid in full as ordered by the Court as restitution.

"11.  One year of your two year sentence will be executed.

"12.  You shall pay the sum of $59.00 costs within 365 days from this date as directed to the Clerk. ·

"13.  Any other rule required by Probation after your release from prison.

"During the period of probation, if it shall appear to the Court that the defendant has violated any one of the conditions of his probation, the Court may after hearing revoke the suspended sentence and impose any sentence which might originally have been imposed.

"Following the period of probation and within the maximum period for which the defendant might have originally been committed, if it shall appear to the Court that the defendant has been convicted of committing another offense committed within said period, the Court may after hearing revoke the suspended sentence and impose any sentence which might originally have been imposed.

"So ORDERED this 5th day of January, 1981.

(signed)    Dale E. Hunt
               Judge

"I have read the above conditions and agree to comply with each of them.

"Signed in open Court this 5th day of January, 1981

(signed)    Dan McVey
               Defendant

Department of Correction
Address

"I have advised the defendant of the meaning and importance of the above conditions.

(signed) Susan K. Carpenter
Attorney for Defendant"
* After your release from prison.

Record at 144–45.

On March 16, 1981 the Jay County Chief Probation Officer filed a Petition to Revoke Probation which alleged McVey's violation as follows:

"4.  Probation Officere [sic] hereby alleges that Dan McVey has violated his Conditions of Probation by virtue of the following reasons:

a.  Re: Rule 1, that on March 5, 1981, the Jay County Probation Department received information from the Indiana Youth Center in reference to Dan McVey.  The information reported that on January 28, 1981, he was guilty of 'Committing an Assault upon another Person' and was given twenty one [21] days in detention.  On February 9, 1981, he was found guilty of 'Disorderly Conduct' and was given thirty [30] days in detention and was transferred to the Indiana State Farm."

Record at 150.

McVey filed a motion to strike the petition to revoke probation.  After argument the motion to strike was denied.  The ruling was accompanied by an extensive trial court memorandum which concluded, in part:

"The Conclusions that this Court has reached include the following:

(1) This Court had full authority to require Defendant to serve a year in prison as a rule or condition of his probation on January 5, 1981;

(2) This Court further had the authority to require as an additional or special rule of probation that Defendant behave himself while in the custody of the Department of Correction or stated in a different manner that he successfully (without misconduct) complete his term of imprisonment as a requirement of his probation;

(3) as indicated by the *Lowdermilk* case *supra*, and Indiana Code 35–50–2–2(b) the period of probation begins for a fixed term on the date that the Court

grants a suspended sentence for a Felony and in this case that is January 5, 1981 when the Court granted Defendant a partially suspended sentence and when he signed his rules of probation and when the Order was entered fixing the term of probation for a term of 2 years from January 5, 1981;

(4) It is therefore clear that at all times since January 5, 1981, including, without limitation, January 28, 1981 and February 9, 1981, Defendant, Dan McVey, has been on probation under the rules entered January 5, 1981 and on good behavior and that he still is on probation and he will be until January 5, 1983 unless after proper hearing or other process his probation is modified, dismissed or revoked by order of this Court."

Record at 196.

Subsequently a probation revocation hearing was held after which McVey's probation was revoked and McVey ordered committed to the Department of Correction for two years. McVey was subsequently credited with 259 days for the time spent in the Jay County Jail prior to the original disposition and for the time spent with the Department of Correction.

McVey argues the trial court committed reversible error by denying his motion to strike the probation revocation petition because he was not on probation at the time the petition to revoke was filed and, consequently, the petition was "premature." He claims that executed sentences and suspended sentences are mutually exclusive and that imprisonment cannot be "construed as envisioning imprisonment . . . [as] a subclass of or, in any way, coterminous with, the term of probation." [Appellant's brief at 24]

One of the relevant statutes is I.C. 35–50–2–2 (Burns Code Ed., Repl.1979). It provides in relevant part:

"(a) The court may suspend any part of a sentence for a felony . . . .

(b) Whenever the court suspends a sentence for a felony, it shall place the person on probation under IC 35–7[35–7–1–1 —35–7–5.1–12] for a fixed period to end not later than the date the suspended sentence expires." [1]

Thus, a trial court may suspend the sentence, place a defendant on probation, all under I.C. 35–50–2–2 and then, under the provisions of I.C. 35–7–2–1(c) (Burns Code Ed., Repl.1979), order, as a condition of probation, the defendant to serve a consecutive period of imprisonment. I.C. 35–7–2–1(c) provides:

"(c) As a condition of probation, the court may also require that the person serve a term of imprisonment in an appropriate facility at whatever time or intervals (consecutive or intermittent) within the period of probation the court determines. Intermittent service may be required only for a term of not more than sixty [60] days and must be served in the county or local penal facility. The term is computed on the basis of the actual days spent in confinement and shall be completed within one [1] year. The person does not earn credit time while serving a term of imprisonment under this subsection. When the court orders intermittent service, it shall state:

(1) The term of imprisonment;

(2) The days or parts of days during which the person is to be confined; and

(3) The conditions."

This statute authorizes either intermittent or consecutive imprisonment as a condition of probation. Although not pertinent in this case, we note there are statutory restrictions on an intermittent term which do not pertain to a consecutive term. *Only* the term of a defendant who does *intermittent* service cannot exceed sixty (60) days, must be served in a county or local penal facility, must be completed within one (1) year, and does not earn credit time.

---

1. This section further provides a felony sentence may not be suspended if the defendant has a prior unrelated felony conviction or the felony committed was one of several enumerated felonies not including theft.

■ Thus, we conclude the trial court was statutorily authorized to suspend McVey's sentence, place him on probation, and order a year's incarceration as a condition of probation.

■ In all candor, we acknowledge an arguable ambiguity exists from the language of the partial suspension order as to the trial court's intent to follow this procedure. However, we find the ambiguity is dissipated by the Conditions of Probation entered by the trial court and accepted by McVey. It contains the express statement that McVey shall serve a one year term of imprisonment as a condition and that, as a further condition of probation, he shall behave well while serving that term. Furthermore, several additional conditions were expressly deferred pending McVey's release from his term of imprisonment. Therefore, the entire tenor of the Conditions of Probation is that McVey is placed on probation as of the date of sentencing, January 5, 1981, with a term of imprisonment a specific condition thereof.[2]

Therefore, we hold the trial court did not err in denying McVey's motion to strike the revocation petition.[3]

McVey's second issue is whether the trial court denied McVey due process in its revocation proceeding by not giving a written statement of reasons supporting the revocation, admitting hearsay testimony, and allowing McVey to testify without advising him of his right against self-incrimination.

■ That part of McVey's argument based upon the alleged admission of hearsay

evidence is waived by his failure to make that objection to the evidence at trial, *Coffee v. State*, (1981) 426 N.E.2d 1318. His argument based upon the claimed violation of his right against self incrimination when he took the stand in his own defense is waived by his failure to make cogent argument, present supporting authority, or indeed, to even refer to the part of the record where the alleged incriminating evidence appears. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Next, contrary to McVey's assertion, the record of proceedings does reflect a statement by the trial court of its reasons for revoking McVey's probation.

"The Court finds that the facts state (sic) in the petition are true and that defendant was on probation as indicated and further that he has violated his rules of probation by committing violation of the Rules of the Department of Correction while in their custody, and by violating the standard of good behavior set forth in Rule number 1 of his Rules of Probation entered in this record on January 5, 1981 and further by committing two new criminal offenses, namely, Battery and Disorderly Conduct and that defendant's conduct shows such a clear and convincing pattern of total disobedience to all authority and inability to obey rules of behavior of whatever sort, that he has violated his rules and conditions of probation as alleged in the petition and his probation should be revoked."

Record at 203.

"The Court finds that based upon the entire record available to the Court con-

---

2. Even were we to conclude the trial court did not require the term of imprisonment as a condition of probation, it is arguable the result would be unchanged. Without deciding the question, we only note that I.C. 35–50–2–2 authorizes a trial court to suspend any part of a felony sentence except under conditions not pertinent to this case. However, under subsection (b) of this statute whenever a sentence is suspended the trial court is mandated to place the defendant on probation for a fixed period which must terminate by the date the suspended sentence expires. Therefore, under this statute, whenever a trial court suspends any part or all of a felony sentence, it "shall place the person on probation under I.C. 35–7 ...."

It could be argued that the directive of the statute is that the probation order shall occur simultaneously with the order of suspension.

3. Having concluded McVey was on probation, we would next logically determine the legitimacy of the probation order condition that McVey behave well while in the custody of the Department of Correction. However, inasmuch as this question is not an issue on appeal, we do not address it. Similarly, the sufficiency of the evidence on the probation revocation is not an issue on appeal.

cerning disposition and the evidence presented on July 31, 1981 and that there is no choice in this cause except to Order the immediate execution of Defendant's sentence. The Court is not unmindful of Defendant's statements made on July 31, 1981 following revocation of his probation and the comments of his attorney; however, the basic issue as to whether or not he would be a fit and proper person for any lesser disposition or for probation supervision at this point in time is clearly settled by the evidence and there is but one conclusion which is that Defendant, Dan McVey, at this time simply cannot accept the authority of anyone other than himself and is completely and totally unfit for probation supervision in any form whatsoever at this point in time."

Record at 205.

■ Therefore, because a statement of reasons does appear, we deem any issue of its adequacy was waived because the issue was not presented in McVey's motion to correct error. *Underhill v. State,* (1981) Ind., 428 N.E.2d 759. In fact, the entire issue of the alleged deprivation of due process in all three facets was not presented in McVey's motion to correct error. Therefore, the issue is not subject to review unless it constituted a denial of "fundamental due process." *Crosson v. State,* (1980) Ind., 410 N.E.2d 1194. None of the errors asserted by McVey rise to this level in that as presented they do not so taint his revocation proceeding, viewed as a whole, as to deprive him of any realistic opportunity for a fair hearing and disposition.

Judgment affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.